IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
INSTAGRAM ACCOUNT
"_bbankroll9lizzy" THAT IS STORED AT
PREMISES CONTROLLED BY META
PLATFORMS, INC.

Case No. 1-24-mj-73-
MAL
Sealed

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, John Bodnar, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for

information associated with a certain Instagram account that is stored at premises owned,

maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic

communications service and/or remote computing service provider headquartered in Menlo Park,

California.  The information to be searched is described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government

copies of the information (including the content of limited communications) further described in

Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment

B, government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

2.     I am a Special Agent with United States Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF), and have been so employed since October 2018.  As part of my employment

with ATF, I graduated from both the Criminal Investigator Training Program and Special Agent


FILED USDC FLND GV
DEC 6 '24 PM 12:57

Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. During the course of my employment with ATF, I have obtained training on various firearms laws and regulations. Additionally, I have participated in and assisted with investigations of violations of the same. I am authorized to execute arrest and search warrants issued under the authority of the United States.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)(1), and Title 21 United States Code, Section 841(a)(1) have been committed by Isaih Malik Cox ("Cox"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     On March 21, 2024, law enforcement attempted to conduct a traffic stop in Gainesville, Florida. The basis for the traffic stop was a failure to stop/yield when leaving the Maa and Paa grocery store, as well as the vehicle having illegal tint. When the vehicle stopped, the four occupants fled on foot. Cox was subsequently identified as the driver of the vehicle by reviewing surveillance video from the Maa ad Paa grocery store. A search of the vehicle revealed, in the map

2

book pocket of the driver's door, a Walmart bag that contained clear and empty sandwich bags along with approximately 22 grams of MDPV. Directly next to the Walmart bag was a black digital scale. The contents in the map book pocket were visible and in the immediate reach of Cox. Law enforcement also located a Glock 10 mm pistol in the center console.

7.     On June 24, 2024, Circuit Judge James Colaw issued an arrest warrant for Cox, finding that there was probable cause to believe that Cox had committed the following offenses based on the March 21, 2024 incident: resisting an officer without violence, trafficking in MDPV, and use or possession of drug paraphernalia.

8.     On or about July 22, 2024, an individual with the username "_bbankroll9lizzy" posted a video "story"[1] on Instagram that depicts Cox. In the video, Cox has a large quantity of United States currency and is spreading it out in front of the camera. As the video continues, Cox handles what appears to be a black AR-15 style pistol, with a black banana clip magazine. Cox also handles a black handgun with a brown magazine in his other hand.

9.     Cox is a convicted felon and is therefore prohibited from possessing firearms in the United States. On or about January 23, 2018, Cox was convicted in the State of Florida of Possession of a Controlled Substance, which is a felony offense punishable by a term of imprisonment greater than one year. Following this conviction, Cox's right to possess a firearm has not been restored.

10.     Further investigation revealed that the July 22, 2024 Instagram video was likely filmed at a three bedroom and three bath apartment located at The Crossing at Santa Fe (3205 NW

---

[1] An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

83rd St, Gainesville, FL). On July 25, 2024, Cox was seen exiting Apt 2124 at the same apartment complex. Cox entered a red sedan and then left the apartment complex in that vehicle.

11.     Shortly thereafter, law enforcement conducted a traffic stop on the vehicle in which Cox was the front seat passenger. The purpose of the traffic stop was to execute Cox's outstanding arrest warrant. After the vehicle was pulled over, law enforcement could see a lot of movement as if Cox was attempting to conceal illegal contraband. Cox initially refused to exit the vehicle but ultimately complied. During a search incident to arrest, law enforcement located illegal drugs (marijuana and oxycodone pills) on Cox's person in a pocket of his pants.

12.     During a search of the vehicle, law enforcement recovered a black Glock 19 pistol containing a magazine with a brown colored end cap from the glove box located immediately in front of Cox. The driver of the vehicle claimed ownership of the firearm but could not identify the make, model, or type of carry. The Glock recovered during the traffic stop appears to be the same handgun Cox was holding during the July 22, 2024 Instagram video.

13.     Additionally, law enforcement officers recovered approximately 55.9 grams of suspected cocaine from under Cox's seat. Chemical analysis by FDLE analysts determined the substance to be substitute cathinones. In my training and experience, I know that substitute cathinones are commonly identified as "molly" in narcotics sales.

14.     FDLE subsequently analyzed swabs taken from the Glock firearm recovered from the July 25, 2024 traffic stop for the presence of DNA. That analysis revealed that the firearm had a mixture of three contributors with at least one male contributor; COX was included as a possible contributor. FLDE's analysis determined that the mixture of DNA on the firearm was 700 billion more times likely to have originated from COX and two unknown individuals than from three unknown individuals.

4

15.    On July 25, 2024, law enforcement also executed a residential search warrant at 3205 NW 83rd Street, Apt 2124, Gainesville, FL. During execution of the residential search warrant, law enforcement recovered a black AR-15 style pistol, which appeared consistent with the other firearm Cox was holding during the July 22, 2024 Instagram video. Additionally, law enforcement recovered numerous other firearms and ammunition, approximately 280 grams of suspected substituted cathinones (i.e., molly), and drug paraphernalia (e.g., baggies and digital scales).

16.    I reviewed the Instagram account "_bbankroll9lizzy," which was publicly viewable on Instagram and appeared to be controlled by Cox due to the numerous photographs depicting him. During my review of the publicly viewable account content, I discovered numerous photographs of Cox possessing firearms, large amounts of US currency, and suspected narcotics dating as far back as October 10, 2021. Examples from the account page are listed below:



(A photograph posted to the account which Cox includes the name "Molly Cowboy." Molly is common slang for synthetic cathinones.)

5



(The account profile photograph, featuring Cox holding a suspected firearm)



(A photograph taken from a highlight reel on the account which appears to feature a firearm in the lower right-hand corner and suspected narcotics in the lower left-hand corner. Furthermore, based on my training and experience, it is my belief that the emojis depicted in this reel are designed to

communicate that individuals looking for synthetic cathinone (which is a white substance similar in appearance to crack cocaine, and which appears to be displayed in the lower left hand corner of the frame, as well as other videos posted by Cox and described in this affidavit) should contact Cox by phone.)



(A photograph taken from a highlight reel on the account which features a baggie containing an unknown white substance that is similar in appearance to synthetic cathinones)



(A photograph taken from a reel on the account that features a barrel of a firearm pointed at the camera)



(A photograph featuring Cox holding a firearm and discussing sales of unknown substances. This photograph was uploaded to the account on December 28, 2022. At that time, Cox did not have any wages reported to the State of Florida.)



(A photograph from the account showing the barrel of a firearm and US Currency. This
photograph was posted to the account on October 10, 2021. At that time, Cox did not have any
wages reported to the State of Florida.)





(Photographs from the account showing Cox with large amounts of U.S. Currency. These photographs were posted to the account on or about July 14, 2024. At that time, Cox did not have any wages reported to the State of Florida.)

17.    Based on my training and experience, I know that Glock firearms are manufactured in Austria and imported into the United States and affect interstate and foreign commerce.

18.    Based on my training and experience, and as explained further below, I know that social media platforms including Instagram retain user data such as videos, messages, and photographs that are uploaded to accounts. I also know that criminal groups will use social media

to show firearms in their possession as well as conduct firearms and narcotics purchases, trades, sales, and research. Here, there is probable cause to believe that Cox has used Instagram in this way because Cox has previously uploaded videos of two suspected firearms on social media which resemble real firearms recovered by law enforcement during the investigation of Cox as described above. Cox has also used the above-described Instagram account to post numerous photographs, videos, and statements featuring or discussing firearms, suspected narcotics, and proceeds of narcotics transactions. Consequently, there is probable cause to believe that a search of the account described in Attachment A for the information described in Attachment B will yield evidence of violations of Title 18, United States Code, Section 922(g)(1), and Title 21 United States Code, Section 841(a)(1) by Cox.

19.     On or about October 17, 2024, when the aforementioned Instagram account was still viewable by law enforcement, a preservation request was served on Instagram.

## BACKGROUND CONCERNING INSTAGRAM[2]

20.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

---

[2] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/;    "Information    for    Law    Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

21.     Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Meta keeps records of changes made to this information.

22.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

23.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

24.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service.  Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

14

25.    Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

26.    Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

27.    Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

28.    One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

29.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram.  Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@").  An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

30.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

31.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

32.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and

retains payment information, billing records, and transactional and other information when these services are utilized.

33.    Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

34.    Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

35.    Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

36.    In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

37.    For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

38.    In my training and experience, evidence of who was using Instagram and from where, and evidence related to the illegal possession of firearms by convicted felons, and the sale of illegal narcotics, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

39.    For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, photos and videos are often created and used in furtherance of criminal activity, including to facilitate the offenses under investigation.

40.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to

understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

41.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

42.     Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.

43.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

44.     Based on the forgoing, I request that the Court issue the proposed search warrant.

45.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

46.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

*John Bodnar*

JOHN BODNAR
Special Agent, ATF

Subscribed and sworn to before me on December 6th , 2024

*Midori A. Lowry*

Honorable Midori Lowry
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with Instagram account "_bbankroll9lizzy" (active on, but not limited to, July 22, 2024), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.     **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on October 17, 2024, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.     All business records and subscriber information, in any form kept, pertaining to the account, including:

   1.   Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

   2.   All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

   3.   Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

   4.   Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

   5.   All advertising information, including advertising IDs, ad activity, and ad topic preferences;

   6.   Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from October 10, 2021, through July 25, 2024;

   7.   Privacy and account settings, including change history; and

       8.      Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from October 10, 2021, through July 25, 2024;

C.    All content, records, and other information relating to communications sent from or received by the account from October 10, 2021, through July 25, 2024, including but not limited to:

      1.      The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

      2.      All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

      3.      All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

      4.      All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the account and other Instagram users from October 10, 2021, through July 25, 2024, including but not limited to:

      1.      Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

      2.      All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

      3.      All contacts and related sync information; and

      4.      All associated logs and metadata;

E.    All records of searches performed by the account from October 10, 2021, through July 25, 2024; and

      F.       All location information, including location history, login activity, information geotags, and related metadata from October 10, 2021, through July 25, 2024.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, United States Code, Section 922(g)(1), and Title 21 United States Code, Section 841(a)(1), those violations involving Isaih Malik Cox and occurring after October 10, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.    The unlawful possession of firearms and ammunition and the sale of illegal drugs;

B.    Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

C.    Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

D.    The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

E.    The identity of the person(s) who communicated with the account holder about matters relating to the unlawful possession of firearms and ammunition and the sale of illegal drugs, including records that help reveal their whereabouts.